UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALDINE WILLIAMS,<br><br>        Plaintiff,<br><br>   v.<br><br>WELLS FARGO BANK, N.A.; NBS DEFAULT SERVICES, LLC; and DOES 1-10, inclusive,<br><br>        Defendants. | Civ. No. 17-02249 WBS KJN<br><br>MEMORANDUM AND ORDER RE: MOTION TO REMAND AND MOTION TO DISMISS |

        Plaintiff Geraldine Williams brought this action against defendants Wells Fargo Bank, N.A. ("Wells Fargo"), NBS Default Services, LLC ("NBS Services"), and Does 1-10 alleging multiple violations of state law under the Homeowner Bill of Rights ("HBOR"). Before the court is plaintiff's Motion to remand this action to the Superior Court of California for the County of Sacramento, where this action had originally been brought (Docket No. 6), and defendant's Wells Fargo's Motion to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 4) and NBS Services' Joinder (Docket No.

1

5.).

In 2006, plaintiff obtained a mortgage loan on property in Manteca, California, pursuant to a promissory note which was secured by a Deed of Trust listing Wells Fargo as the lender. (Compl. ¶¶ 1, 2, 8, 9.)[1] The Deed of Trust listed Golden West Savings Association Service Co. ("Golden West") as the Trustee and the amount borrowed as $357,000.00. (Id. ¶ 9.) In April of 2009, plaintiff received a loan modification. (Id. ¶ 35.) At a later point, Wells Fargo substituted NBS Services as trustee under the Deed of Trust in lieu of the original trustee Golden West. (Id. ¶ 15.)

Due to a change in her employment circumstances, plaintiff was unable to make her November 1, 2016, monthly payment on her note. (Id. ¶¶ 10-12.) Plaintiff reached out to Wells Fargo seeking assistance and in response, Wells Fargo invited her to submit an application for a loan modification. (Id. ¶ 13.) This allegedly began a year-long struggle of back-and-forth submissions of requested documents between plaintiff and Wells Fargo. (Id. ¶ 14.) In June of 2017, defendants recorded a Notice of Default against plaintiff's interest in the property. (Id. ¶ 16.) In early August of 2017, Wells Fargo

---

[1] Defendant Wells Fargo requests judicial notice of the following documents: (1) a certificate of Corporate existence; (2) the letter authorizing a name change from World Savings Bank to Wachovia Mortgage; (3) the Charter of Wachovia Mortgage; (4) the Official Certification of the Comptroller; (5) the printout from the website of the Federal Deposit Insurance Corporation; (6) the 2009 Modification Agreement; (7) the Notice of Default and Sell Under Deed of Trust; and (8) the Notice of Trustee's Sale. (Docket No. 4-1.) As the court does not rely on any of these documents, it need not decide whether these documents may be judicially noticed.

2

allegedly instructed plaintiff to submit a new application to obtain a loan modification, which plaintiff contends she did. (Id. ¶¶ 17, 18.) In late August of 2017, Wells Fargo allegedly informed plaintiff that she was also required to participate in a "Financial Interview" with a Wells Fargo representative. (Id. ¶ 20.) However, without first conducting the financial interview, plaintiff was informed verbally by Wells Fargo that her application for a loan modification would not be reviewed. (See Id. ¶¶ 21, 22.) While plaintiff's application was allegedly pending with Wells Fargo, on September 13, 2017, defendants recorded a Notice of Trustee's Sale, which set a sale date of October 16, 2017. (Id. ¶ 26.)

On October 12, 2017, plaintiff commenced this action against defendants Wells Fargo and NBS Services for: (1) failure to make an adequate written determination that plaintiff was not eligible for a loan modification before recording a notice of default or notice of sale, while the loan modification application was pending, in violation of Cal. Civ. Code. § 2923.6(c); (2) failure to have a single point of contact assigned to plaintiff's request for an available foreclosure prevention alternative, in violation of Cal. Civ. Code § 2923.7(b); and (3) failure to provide written acknowledgment of the receipt of the first lien modification application and documentation within five business days of receipt, in violation of Cal. Civ. Code § 2924.10. (Def.'s Notice of Removal. Ex. A (Docket No. 1-1).) Plaintiff obtained a temporary restraining order enjoining defendants from foreclosing, selling, or auctioning plaintiff's home at the trustee sale on October 13, 2017. (Docket No. 1-1.)

3

On October 26, 2017, defendant Wells Fargo removed the case under 28 U.S.C. § 1441(b) based on diversity jurisdiction under 28 U.S.C. § 1332. (Def.'s Notice of Removal (Docket No. 1).)

I. Motion to Remand

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants . . . ." 28 U.S.C. § 1441(b). However, if "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). District courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states . . . ." 28 U.S.C. § 1332.[2] The party asserting diversity jurisdiction bears the burden of proof. Resnik v. La Paz Guest Ranch, 289 F.2d 814, 819 (9th Cir. 1961) "The burden is particularly stringent for removing defendants," Corral v. Select Portfolio Servicing, Inc., No. 15-16574, 2017 WL 6601872, at *2 (9th Cir. Dec. 27, 2017), and "[w]here doubt regarding the right to removal exists, a case should be remanded to state court." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).

To determine if the amount in controversy requirement is met, the court looks to the amount demanded by the plaintiff

---

[2] Defendants assert, and plaintiff does not dispute, that Wells Fargo is a citizen of South Dakota and NBS Services is a citizen of Delaware and Texas, and that plaintiff is a citizen of California. (Def.'s Notice of Removal at 2-4.)

4

in the Complaint. See <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 291-92 (1938). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." <u>Matheson</u>, 319 F.3d at 1090. Here, it is not facially evident from the Complaint that the amount in controversy is $75,000. The Complaint prayed for "an order . . . enjoin[ing] [defendants] from further foreclosure proceedings over the Subject's Property during the pendency of this action." (Compl. Prayer for Relief.) The Complaint did not request a specific amount in damages, but prayed for compensatory, consequential, general, and statutorily available damages as well as attorney's fees.[3] <u>Id.</u>

"In actions seeking declaratory or injunctive relief, . . . the amount in controversy is measured by the value of the object of the litigation." <u>Hunt v. Wash. St. Apple Advert. Comm'n</u>, 432 U.S. 333, 347 (1977) (citations omitted). Here, defendant Wells Fargo cites the Prayer for Relief, which asks "For an Order requiring Defendants to show cause . . . why they should not be preliminarily and/or permanently enjoined from conducting any further foreclosure proceedings over the Subject Property during the pendency of this action." (Compl. Prayer for Relief at 10.) Thus, defendant asserts plaintiff seeks injunctive relief and the property at issue is the object of

---

[3] Plaintiff states elsewhere in the Complaint that "if Defendants conduct the sale without having first cured this material violation, Plaintiff is entitled to either $50,000 statutory damages or treble damages." (Compl. ¶ 44.)

litigation, and under either metric to ascertain the property's value--considering the loan amount secured by the property, $357,000, or the current amount of arrearage, $323,130.70--the statutory minimum is met. (Def.'s Notice of Removal at 7.)

HBOR provides that in an action for injunctive relief "[a]ny injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, [or] trustee, . . . has corrected and remedied the violation . . . giving rise to the action for injunctive relief." Cal. Civ. Code § 2924.12(a)(2). Here, the only injunction plaintiff can seek under HBOR is temporary. See Aguilar v. Wells Fargo Bank, N.A., Civ. No. 2:17-00480-KJM-AC, 2017 WL 3438612, at *2 (E.D. Cal. Aug. 10, 2017) (Mueller, J.) ("[A]lthough plaintiff prays for 'injunctive relief enjoining the Defendants ... from foreclosing and/or otherwise selling and/or auctioning the Subject Property,' . . . there is no doubt that plaintiff seeks only an injunction against foreclosure until defendants comply with the HBOR because the HBOR authorizes no more."). Thus, it is immaterial that the plaintiff's Prayer for Relief asks the court to "permanently enjoin[] [defendants] from conducting any further foreclosure proceedings." See Perryman v. JPMorgan Chase Bank, N.A., Civ. No. 1:16-00643 LJO SKO, 2016 WL 4441210, at *6 (E.D. Cal. Aug. 23, 2016)(O'Neill, J.) ("Plaintiff seeks to 'permanently' enjoin Chase . . . under the HOBR . . . . This cannot be read to mean Plaintiff seeks to enjoin the trustee's sale permanently, particularly because the injunction available under Section 2924.12(a)(2) is temporary and survives only until any violation of the HOBR is corrected or remedied.").

The court is bound by a recent Ninth Circuit decision on this issue. In Corral v. Select Portfolio Services Inc. the Ninth Circuit held the amount in controversy does not equal the value of the property or amount of indebtedness where plaintiff seeks only a temporary injunction pending review of a loan modification application pursuant to HBOR.[4] Corral, 2017 WL 6601872, at *1, *5. Rather, the "'object of litigation' is a temporary injunction of the foreclosure process to require [defendants] to consider [plaintiff's] loan modification application."[5] See id. at *4. Because plaintiff seeks a temporary injunction under the HBOR, neither the value of plaintiff's property or the loan balance is the object of this litigation and therefore neither establishes the $75,000 amount

---

[4] Prior to Corral, the "[c]ourts were divided as to whether temporary injunctive relief under HBOR makes the value of the property or the loan value the object of the litigation. See Perryman, 2016 WL 4441210, at *5; Aguilar, 2017 WL 3438612, at *2. As Turner summarized:

> Some courts have concluded that an injunction to afford time to remedy HBOR violations related to a loan modification application places the modification itself—not the property or the loan—at the center of the litigation. Others conclude that any injunction on foreclosure, however temporary, places the injunctive relief at the heart of the litigation thus implicating the value of the property or the amount of the underlying mortgage to establish the amount in controversy.

Turner v. Wells Fargo Bank, N.A., Civ. No. 2:16-01095 TLN KJN, 2017 WL 2214961, at *2 (E.D. Cal. May 19, 2017) (Nunley, J.) (internal citations and quotations omitted).

[5] Where "a plaintiff seeks to quiet title to a property or permanently enjoin foreclosure, the object of the litigation is the ownership of the property. Therefore the value of the property or the amount of indebtedness on the property is a proper measure of the amount in controversy." Id. at *5.

in controversy requirement.

Defendant Wells Fargo also asserts that the amount-in-controversy requirement is met under the Ninth Circuit's "either viewpoint" rule. (Def.'s Opp'n at 5.) "Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." Corral, 2017 WL 6601872 at *4 (quoting In re Ford Motor Co./Citibank (S. Dakota), N.A., 264 F.3d 952, 958 (9th Cir. 2001)). Thus, defendants may establish the amount in controversy by establishing that by a preponderance of the evidence "the benefit to [plaintiff] of the delay [in foreclosure] would exceed $75,000, or that the cost to [defendant] from the delay [in foreclosure] would exceed $75,000." See id. However, Wells Fargo does not explain how the benefit to plaintiff or the cost to Wells Fargo from the delay would exceed $75,000. See Matheson, 319 F.3d at 1090-91 ("Conclusory allegations as to the amount in controversy are insufficient.") Further, any pecuniary harm or benefit to either party is minimal because "[t]he only pecuniary harm that would be suffered by [defendant] is the cost of having to review [plaintiff's] loan modification application and of having to delay foreclosure for the length of that review. Meanwhile, the only pecuniary benefit that would be gained by [plaintiff] would be derived from temporarily retaining possession of the Property while [defendant] reviews the application." See Corral, 2017 WL 6601872, at *4.

In the Ninth Circuit, "[p]arties seeking to establish diversity jurisdiction over such cases may still demonstrate that

the amount in controversy requirement is satisfied using other
measures, such as the transactional costs to the lender of
delaying foreclosure or a fair rental value of the property
during the pendency of the injunction." Corral, 2017 WL 6601872,
at *5. The Court further stated that "such amounts can be added
to any other compensatory damages sought by the plaintiff to
determine whether more than $75,000 is in controversy." Id.
Defendant Wells Fargo argues in its opposition that the amount in
controversy requirement is alternatively met by the aggregate
number of damages including: (1) $50,000--plaintiff's request for
statutory damages or treble damages; (2) $17,052.64--the arrears
on the loan as of June 2017, and (3) $30,000--attorney's fees.
(Def.'s Opp'n at 6.)

California Civil Code § 2924.12(b) provides:

> After a trustee's deed upon sale has been recorded, a
> mortgage servicer, mortgagee, trustee, beneficiary, or
> authorized agent shall be liable to a borrower for actual
> economic damages . . . resulting from a material violation
> of [HBOR] . . . where the violation was not corrected and
> remedied prior to the recordation of the trustee's deed upon
> sale. If the court finds that [a] material violation [of
> HBOR] was intentional or reckless, or resulted from willful
> misconduct by a mortgage servicer, mortgagee, trustee,
> beneficiary, or authorized agent, the court may award the
> borrower the greater of treble actual damages or statutory
> damages of fifty thousand dollars ($50,000).

Cal. Civ. Code § 2924.12(b). The $50,000 statutory damages
provision of § 2924.12 only applies after a sale has been
conducted in a manner the court finds to be willful or reckless
and neither of these conditions are present in the case currently
before the Court. Further, to the extent defendant relies on
this amount under the "either viewpoint" rule, the amount cannot

9

be equated to the potential cost to the defendant of complying with the injunction.  Here, "plaintiff's Complaint 'contains no allegations indicating that Defendants[ ] have sold the Property or recorded a trustee's deed upon sale.'"  See Jauregui v. Nationstar Mortg. LLC, Civ. No. 15-00382-VAP, 2015 WL 2154148, at *4 (C.D. Cal. May 7, 2015) (quoting Gardenswartz v. SunTrust Mortgage, Inc., No. 14-8548, 2015 WL 900638, at *5-6 (C.D. Cal. Mar. 3, 2015)).  Rather, plaintiff alleges the trustee's sale was scheduled for October 16, 2017.  (Compl. ¶ 16.)

        Furthermore, before the sale took place, the state court issued a temporary restraining order enjoining defendants from selling plaintiff's home.  (Pl.'s Mot. to Remand at 4.)  As the court in Jauregui explained: "The Court determines the amount in controversy from the allegations in the Complaint . . . . Plaintiff does not allege that the sale has occurred or that a trustee's deed upon sale has been recorded.  Section 2924.12(b), therefore, does not apply."  Jauregui, 2015 WL 2154148, at *5 (C.D. Cal. May 7, 2015).  See also Weiss v. CitiMortgage, Inc., Civ. No. 14-2023 AG(DFM), 2015 WL 12766047, at *1 (C.D. Cal. May 18, 2015) ("It does not appear that a trustee's deed upon sale has been recorded, and accordingly, it is not clear that $50,000 for each alleged violation under section 2924.12(b) should be included in the amount in controversy.").

        Thus, defendant cannot rely on the $50,000 of damages requested by plaintiff because § 2924.12(b) is inapplicable.[6]

---

[6] Although the Complaint requests compensatory, consequential, general, and statutorily available damages, "this language appears to be boilerplate and unsupported by any allegations in the complaint." (Compl. Prayer for Relief; see

10

See id.

Defendant asserts the arrears on the loan as of June 2017 amounts to $17,052.64. (Def.'s Opp'n at 6.) Defendant argues that the cost of the injunction to Wells Fargo must include the loss of its rights to receive the loan reinstatement funds and ongoing monthly payments that would otherwise be legally required for Plaintiff to stop the foreclosure. (Def.'s Opp'n at 6.) However, the Ninth Circuit held that the amount in controversy where the plaintiff seeks only a temporary injunction pending review of a loan modification application does not include the amount of indebtedness. See Corral, 2017 WL 6601872, at *4. Furthermore, the Ninth Circuit explained the only pecuniary harm to defendant is the cost of having to review plaintiff's loan modification application and of having to delay foreclosure for the length of that review. Id. Thus, the $17,052.64 that defendant asserts is owed on the loan as of June 2017--the date defendants recorded a Notice of Default against plaintiff's interest in the property--may not be included to determine the amount in controversy.

Defendant estimates that $30,000 in attorney's fees would be incurred to take this action through summary judgment. "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees

---

Prepuse v. Caliber Home Loans, Civ. No. 16-00267 CJC DTBX, 2016 WL 1060830, at *3 (C.D. Cal. Mar. 17, 2016) (stating plaintiff's request for compensatory damages, general damages in tort, special damages, treble damages, and statutory damages, according to proof, could not be considered in determining whether the amount in controversy exceeded $75,000 for a violation of HBOR).

11

may be included in the amount in controversy." Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998). California Civil Code 2924.12(h) provides:

> A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

Cal. Civ. Code § 2924.12(h). Defendant's assertion that attorney fees will total $30,000 is "too speculative to support its burden of establishing jurisdiction by a preponderance of the evidence." See Conrad Assocs. v. Hartford Acc. & Indem. Co., 994 F. Supp. 1196, 1200 (N.D. Cal. 1998) (finding defendant's contention that attorney fees are likely to total at least $20,000 too speculative where defendant simply asserts that it will take eighty hours to bring this case to the summary judgment stage without providing any factual information of how it arrived at this figure and too speculative to state that every hour expended will be billed at $200 an hour); Johnson v. Wells Fargo Home Mortg., Civ. No. 12-00144 GAF SPX, 2012 WL 1229880, at *4 (C.D. Cal. Apr. 11, 2012) (finding argument "that Plaintiff's counsel is billing at a rate of $400 per hour, meaning that 'were this case to go to trial Plaintiff's counsel would be required to expend approximately 125 hours in preparation,' for a total of $50,000 in attorney's fees as 'nothing more than speculation.'")

Because defendant has not established by a preponderance of the evidence that the amount in controversy is

over $75,000, the court will grant plaintiff's Motion to remand.[7]

IT IS THEREFORE ORDERED that plaintiff's Motion to remand this action (Docket No. 6) be, and the same hereby is, GRANTED, and this action is hereby REMANDED to the Superior Court of the State of California, in and for the County of Sacramento.

Dated: January 16, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[7] The court expresses no opinion on defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) (Docket No. 4).